IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WENDY GRETCHEN SCHMIDT,

        Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

No. 3:16-cv-01568-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER KERR & ROBICHAUX
P.O. Box 14490
Portland, Oregon 97293

    Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - OPINION & ORDER

Christopher J. Brackett
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Wendy Schmidt brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand for benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 3, 2012, alleging an onset date of March 1, 2011. Tr. 224-25. Her application was denied initially and on reconsideration. Tr. 98-115, 147-51 (Initial); Tr. 116-32, 153-56 (Reconsideration). On July 28, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 30-67. On August 27, 2014, the ALJ found Plaintiff not disabled. Tr. 7-29. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having severe pain, chronic fatigue, depression, anxiety, bladder pain, fibromyalgia, possible endometriosis, bipolar disorder, sleep problems, migraines, depersonalization disorder, and "brain fog/poor memory." Tr. 381. At the time of the hearing, she was forty-one years old. Tr. 33 (showing date of birth). She is a college graduate and has past relevant work experience in the "general clerical area." Tr. 36-37, 65.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through March 31, 2013, her date of last insured. Tr. 12. Next, at step two, the ALJ determined that Plaintiff has severe impairments of affective disorder, anxiety disorder, and fibromyalgia. Tr. 12-13. However, at step three, the ALJ determined that her impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 13-15.

At step four, the ALJ concluded that Plaintiff had the following RFC:

[T]hrough her date of last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b); specifically, to lift and/or carry 20-pounds occasionally and 10 pounds frequently, to stand/and or walk (with normal breaks) for a total of six hours in an eight-hour workday, and to sit (with normal breaks) tor a total of six hours in an eight-hour workday. The claimant could perform simple, repetitive tasks consistent with a specific vocational preparation (SVP) level of 1 or 2. She could read, write, and subtract at the level of a person with four years of college education. The claimant could have occasional contact with the public.

Tr. 15. With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 20-21. However, at step five, the ALJ determined that Plaintiff is able to

4 - OPINION & ORDER

perform jobs that exist in significant numbers in the economy such as rental clerk and office helper. Tr. 21-22. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 22.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff alleges that the ALJ (1) erred at step two by not finding certain impairments to be severe; (2) improperly rejected the opinions of four different medical practitioners; (3) improperly found her subjective limitations testimony not entirely credible; (4) improperly found that her impairments failed to meet or equal a listed impairment at step three; and (5) failed to conduct an adequate analysis at step five. Because I agree with Plaintiff that the ALJ improperly failed to credit the somatic symptom disorder diagnosis given by medical expert Julie Frederick,

5 - OPINION & ORDER

Ph.D., and because Dr. Frederick's testimony, when credited, establishes that Plaintiff is disabled at step three of the sequential analysis, I discuss only that issue and do not address Plaintiff's other alleged errors.

Dr. Frederick testified as a medical expert at Plaintiff's hearing. Tr. 57-64. She explained that based on her education, experience, and training, combined with her review of the medical records, Plaintiff had three diagnoses: (1) recurrent, major depression; (2) generalized anxiety disorder; and (3) somatic symptom disorder. Tr. 58-59. She listed the somatic symptom disorder as a "provisional diagnosis" because, even though "the record supports [it]," "it's not listed[.]" Tr. 59. In response to the ALJ's question, Dr. Frederick explained that she used "provisional" in classifying the somatic symptom disorder because "although, the symptoms and the history are in the medical records, no other provider has given that diagnosis and so, I just always feel a little uncertain adding a diagnosis, just based on my review of the record[,] that's new and doesn't - - hasn't been listed by any other provider." Tr. 60

Based only on the depression and anxiety diagnoses, Dr. Frederick further testified that Plaintiff had moderate difficulties in social functioning, marked difficulties in concentration, persistence, and pace, and one to two episodes of decompensation in 2012. Tr. 60. She disagreed with the social functioning assessment given by treating psychologist Darrel Eacret, Ph.D., believing Plaintiff's social function was better than Dr. Eacret had opined. Tr. 62.

Finally, Dr. Frederick testified that when the somatic symptom disorder was considered, it increased Plaintiff's impairments and produced marked limitations activities of daily living. Tr. 60. She explained that with the three diagnoses considered in combination, Plaintiff's impairments equaled Listed Impairments 12.04, 12.06, and 12.07. Tr. 59.

The ALJ found Dr. Frederick's opinions about the existence of major depressive disorder and generalized anxiety order to be consistent with the record. Tr. 12. He did not accept her provisional somatic symptom disorder diagnosis at step two or step three, stating that a provisional diagnosis is not a medically determinable impairment and cannot be properly considered. Tr. 12, 14. He indicated that because the diagnosis was provisional, it was not supported by objective findings or corroborated in the record. Tr. 13. However, he gave great weight to Dr. Frederick's functional limitations testimony because it was consistent with the record as a whole. Tr. 13-14.

Plaintiff argues that the ALJ erred by rejecting Dr. Frederick's opinions regarding somatic symptom disorder and that Plaintiff's impairments in combination equaled listed impairments. Plaintiff points to Dr. Frederick's testimony that although she added "provisional" to the somatic symptom disorder because other providers had not previously assessed it, she stated the "record supports [it]," Tr. 59, the "symptoms and history are in the medical records," *id.*, and expressly stated that "the whole collection of records and the history supports it pretty well." Tr. 61. The ALJ also confirmed that "in fairness, no other provider [has] sort of done what you've done, which is go back and read all the reports, that I can tell[,]" to which Dr. Frederick agreed. *Id.* When asked about Plaintiff's prognosis, Dr. Frederick testified that it was not very good for the somatic symptom disorder diagnosis. Tr. 63 (further stating that she "would be pretty guarded about whether there would be much improvement, in that area," even with regular treatment). Based on this testimony, Plaintiff argues that she should be found to have the medically determinable impairment of a somatic symptom disorder.

Defendant cites to the regulation requiring a mental impairment to be established by

7 - OPINION & ORDER

"medical evidence consisting of signs, symptoms, and laboratory findings[.]" 20 C.F.R. § 404.1508. Defendant argues that because Dr. Frederick hesitated in giving a somatic disorder diagnosis, her uncertain testimony fails to meet this regulatory requirement establishing it as a medically determinable impairment. Thus, Defendant contends the ALJ did not err.

Plaintiff responds by arguing that the mental impairment regulation has been satisfied based on Dr. Frederick's opinion that the record and history supported the diagnosis. The only reason Dr. Frederick labeled it as "provisional" was because previous providers had not listed it as a diagnosis. However, none of the previous providers had reviewed the entire record. The expert's testimony, supported by the entire record which contained evidence consisting of signs, symptoms, and laboratory findings, supported a somatic symptom disorder. Thus, Plaintiff argues, the ALJ should have credited the diagnosis and then found her disabled at step three.

Neither party cites any case law on this issue and I found no controlling Ninth Circuit cases on point. The District of Maine has stated that if the diagnosis is provisional, it cannot be a medically determinable impairment. *Larlee v. Comm'r*, No. 2:14-CV-00228-JDL, 2015 WL 3400664, at *8 (D. Me. May 27, 2015) (citing *Coleman ex rel. A.P. v. Astrue*, Civil No. 09–8–P–H, 2009 WL 3517583, at *2 (D. Me. Oct. 29, 2009) (rec. dec., aff'd Nov. 17, 2009)) . However, *Coleman*, the case *Larlee* relied on for support, concerned a "rule out" diagnosis, not a provisional diagnosis. And, the case *Coleman* relied on goes further afield from supporting the proposition as stated by *Larlee* because there the court ruled that the ALJ did not err in failing to order IQ testing or to consider a listing for borderline intellectual functioning when the diagnosis was "rule out borderline intellectual functioning with more salient nonverbal than verbal abilities" and the plaintiff did *not* allege that his condition met the listing. *Tomlinson v. Astrue*,

No. 3:07–cv–68–RLY–WGH, 2009 WL 161818, at **8-9 (S. D. Ind. Jan. 21, 2009) (cited by *Coleman*, 2009 WL 3517583, at *2).

In contrast, some cases have listed provisional diagnoses among a claimant's medically determinable impairments. *E.g.*, *Mangum v. Colvin*, No. CV-12-0414-WFN, 2013 WL 5496830, at *2 (E.D. Wash. Oct. 3, 2013) (stating that at step two, "the ALJ found that Plaintiff had the following severe impairments: . . . a provisional cognitive disorder, . . . ."); *Glass v. Astrue*, No. 3:12-CV-00627-AC, 2013 WL 4496500, at *4 (D. Or. July 29, 2013) (in describing the ALJ's step-two determination regarding the plaintiff's impairments, court quoted ALJ's decision which characterized a "provisional diagnosis of a personality disorder" as a "medically determinable mental impairment"), *adopted as modified sub nom. Glass v. Colvin*, No. 3:12-CV-00627-AC, 2013 WL 4478694 (D. Or. Aug. 20, 2013). While these decisions did not address the issue of whether a provisional diagnosis is, by that characterization alone, incapable of being a medically determinable mental impairment, the decisions show at a minimum that courts and ALJs have, in some cases, considered provisional diagnoses as medically determinable impairments.

According to the current version of the *Diagnostic & Statistical Manual of Mental Disorders (DSM-5)*, "[t]he specifier 'provisional' can be used when there is a strong presumption that the full criteria will ultimately be met for a disorder but not enough information is available to make a firm diagnosis." Am. Psych. Ass'n, *DSM-5* 23 (5th ed. 2013). Although Dr. Frederick used the term "provisional" in describing the somatic symptom disorder diagnosis, her testimony at the hearing establishes that she did not use the term consistent with the intent of the *DSM-5*. On the contrary, she stated, more than once, that the diagnosis was supported by the history and the record. She never indicated she was lacking sufficient information to make a firm diagnosis.

Her sole reason for giving it a provisional label was because other providers had not expressly listed it.

Even if the case law generally held that a provisional diagnosis cannot be considered a medically determinable mental impairment, Dr. Frederick's testimony would justify an exception to such a rule. On this specific combination of unique facts where (1) the testimony is clear that Dr. Frederick concluded that the diagnosis was fully supported by Plaintiff's medical record and the history, (2) the expert witness was the only medical provider who reviewed the entire record, and (3) she explained the provisional diagnosis the way she did, Dr. Frederick's reluctance to fully endorse the somatic symptom disorder does not make that diagnosis inconsistent with a medically determinable mental impairment. Because the ALJ fully credited Dr. Frederick's testimony and because he gave no reason for discounting the somatic symptom disorder diagnosis other than its provisional label, his failure to consider it a medically determinable mental impairment was error.

Moreover, Dr. Frederick's testimony, which the ALJ accepted in every other regard, establishes that when the somatic symptom disorder is considered, Plaintiff's impairments meet at least one listed impairment at step three. This supports a remand for benefits. First, the ALJ failed to provide legally sufficient reasons for rejecting evidence. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Second, the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* Therefore, remand for benefits is appropriate.

/ / /

## CONCLUSION

The Commissioner's determination is reversed and remanded for the payment of benefits.

IT IS SO ORDERED.

Dated this 20 day of June, 2017

_____
Marco A. Hernandez
United States District Judge